R. L. GODWIN et al. v. ERWIN COTTON MILLS COMPANY.*

(Filed 1 April, 1908).

Contracts— Bankruptcy — Preferences— Principal and Agent — Partnership—Evidence—Demurrer.

"Equity regards that as done which ought to be done." Defendant and Y. entered into an agreement to form a corporation for mercantile purposes. With this in view, Y. bought goods, commenced business and thereafter requested defendant to pay for its part of the merchandise, which it did. The business was chartered, but not incorporated. Y. sent a bill of sale of the merchandise to defendant without its suggestion, in value equaling the amount paid by defendant. In an action by the trustee in bankruptcy of Y. to recover the amount as a fraudulent preference: *Held*, (1) there was no evidence to establish the relationship of debtor and creditor nor of partnership; (2) there was no evidence of fraud or a preference, under the bankrupt act; (3) the court should, upon the foregoing evidence introduced by plaintiff's trustee, have sustained a demurrer and dismissed the action.

HOKE, J., concurred in the result.

ACTION tried before *Jones, J.*, and a jury, at May Term, 1907, of HARNETT.

The plaintiffs' evidence and the verdict of the jury tend to establish the following facts: Defendant corporation was, some time prior to 16 May, 1903, engaged in building a cotton mill at Duke, a village a few miles distant from Dunn, in Harnett County. E. F. Young, who resided in Dunn, had prior thereto been the agent of defendant company at Dunn. Young and W. A. Erwin had made an agreement looking to the establishment of a "commissary" at the mills, when completed to be known as "The Young Mercantile Company." Prior to the time at which the mercantile company was to be started, and in pursuance of the agreement, Young opened a commissary at Duke, the purpose being to organize the corporation when the mill was completed. A charter was obtained from the Secretary of State for the said Young Mer-

*BROWN, J., took no part in the decision of this case.

cantile Company 5 August, 1903, Young. taking five shares, Erwin four shares and Fuller one share. The company was never organized. Young, a witness for plaintiff, testified: "As the work increased it became necessary to enlarge the stock, and a few days prior to the receipt of the check (in controversy) Mr. Erwin was at Duke, and I told him I wanted him to advance some money for the commissary, and he agreed to do so, and sent the check, accompanied by a letter as follows: 'Enclosed please find our check on Fidelity Bank, Durham, N. C., No. 16862, for $2,000, in payment of the advancement that you recently made in the purchase of stock of merchandise for the commissary at Duke, and which, agreeable to understanding and in consideration of this payment, you are to assign to the mercantile company to be incorporated by us. Wishing, etc. (Signed) Erwin Cotton Mills Company, by W. A. Erwin, Secretary and Treasurer.'" This letter, with the check, bears date of 16 May, 1903. On 9 June, 1903, Young acknowledged receipt of the check "for commissary account, on terms as stated in letter enclosing the same." The check was deposited in bank to Young's personal account. He had bought the goods for the commissary with his individual funds. The Erwin Cotton Mills Company was to have stock in The Young Mercantile Company. On 6 February, 1904, Young executed a bill of sale to the Erwin Cotton Mills Company (reciting a consideration of $2,000) of the goods, wares, merchandise, etc., of the "commissary situated in the village of Duke." This assignment was made and sent by Young to Erwin without any request from him. Young says: "At the time I got this check for $2,000 it was understood between Mr. Erwin and myself that this was to be accounted for in the formation of the commissary. * * * I was not then indebted to defendant." It was found by the jury that defendant sold the goods assigned for $2,304, leaving a balance of $218, which was paid to Young 4 June, 1904, before the proceedings in bankruptcy

and before any suit was brought. The testimony of W. A. Erwin, a witness for defendant, was substantially the same as Young's about the agreement in regard to the commissary. He says: "We began a commissary business under the name of 'Commissary.' Mr. Young was working for us and was acting for The Young Mercantile Company in conducting that business. Goods were bought and business begun. Young told me on one occasion he had spent $4,000 for goods and wanted half; so I sent him check on my return.  *  *  * We neither loaned nor advanced him the $2,000, but paid him $2,000 for one-half interest in the stock of goods he told me he had paid for. The stock of goods belonged to Young Mercantile Company and we were paying our part.  *  *  * I never considered myself a partner with E. F. Young in his mercantile business. The commissary belonged one-half to Young and one-half to Erwin Cotton Mills. The cotton mills put in $2,000 because Young said he had put $4,000 in the business and we wanted to pay our half of it." The jury found, under instructions from the court, that the defendant had no interest "as partner" in the stock of goods; that Young was indebted to defendant in the sum of $2,000; that the transfer was an unlawful preference, and that defendant had reasonable cause to believe that a preference was intended by Young. There was testimony bearing upon the last two issues which, in the view taken by the court, becomes immaterial. Young was insolvent 6 February, 1904, and adjudged a bankrupt 4 June, 1904. The defendant moved for judgment of nonsuit. Motion denied. Defendant excepted. There are other exceptions in the record, not necessary to be set out. Plaintiffs demanded judgment for the whole amount for which defendant sold the goods, as found by the jury tò be $2,304. The court rendered judgment that plaintiffs recover of defendant $2,000 and refused to adjudge the recovery of the amount paid to E. F. Young, $218. Both parties excepted and appealed.

*Godwin & Townsend, R. L. Godwin* and *Stewart & Muse* for plaintiffs.

*Rose & Rose* and *J. C. Clifford* for defendant.

CONNOR, J., after stating the case: We are of the opinion that this case was tried upon an erroneous theory or principle. Taking the plaintiffs' evidence to be true, and it is fully sustained by the two letters which give character to the transaction, and the evidence of the defendant, it is clear that, in respect to the $2,000 check sent Young by the defendant, the relation of debtor and creditor did not exist. The defendant company never loaned Young the amount and Young never promised to pay it. The facts repel any implied promise to do so. It is manifest that Young expressly assumed the duty to hold the goods as the property of the mercantile company and, upon the organization of the corporation, to transfer them to it. If the corporation had been organized, can there be any doubt that, by an action in the nature of a bill in equity, the performance of this duty, upon Young's own evidence, would have been enforced and he required to assign the goods? Is it not equally clear that, if for any good reason the agreement to organize was not effected, Young had the goods in trust for the persons who had paid for them? The jury correctly found that there was no partnership relation between the parties. How it may have been in respect to persons who may have become creditors of the "commissary" or Young Mercantile Company (in process of formation) is another and different question, not presented upon this appeal. For the purpose of carrying into effect an agreement to open and conduct a "commissary" at the mills, to be organized under a charter, Young bought and paid for the goods and called upon defendant to pay its one-half of the amount which he had expended. Recognizing its obligation to do so, defendant sent Young the check "in payment of the advancement that you recently made in the purchase of stock of merchandise for the commissary at Duke, and which, agreeable to under-

standing and in consideration of this payment, you are to assign to the mercantile company to be incorporated by us." Young acknowledges receipt "for the purpose indicated." There is nothing in this transaction which either shows or tends to make Young the debtor of defendant. If the goods had been destroyed by fire, is it not clear that the loss, to the extent of one-half, would have fallen upon the defendant? Instead of making Young the debtor of the defendant, the transaction savors more strongly of a payment by the defendant to Young of a debt due him. He had advanced $4,000 to purchase a stock of goods for the joint benefit of defendant and himself, and the latter was paying its part of the money advanced. The equitable principle upon which the relation of the parties rested, and by which their duties and rights are fixed, finds expression in the maxim that "Equity regards that as done which ought to be done." Of this maxim Mr. Bispham says: "This is a very important maxim, and which lies at the foundation of many of the great doctrines of equity. For the purpose of reaching exact justice, equity will frequently consider that property has assumed certain forms which it ought in justice to assume, or that parties have performed certain duties which they ought in justice to fulfill, and will regulate the enjoyment and transmission of estates and interests accordingly." Bispham Eq., sec. 44. Professor Pomeroy says: "It is the source of a large part of that division of equity jurisprudence which is concerned with equitable property; the doctrines and rules which create and define equitable estates or interests, in a large measure, are derived from its operation. * * * In the first place, it should be observed that the principle involves the notion of an equitable *obligation* existing from some cause; of a present relation of equitable right and duty subsisting between two parties—a right held by one party, from whatever cause arising, that the other should do some act, and the corresponding duty, the *"ought,"* resting upon the latter to do such

act. Equity does not regard that as done which *might* be done or that *could* be done, but only what *ought* to be done. Nor does the principle operate in favor of every person, no matter what may be his situation and relations, but only in favor of him who holds the equitable right to have the act performed, or against the one upon whom the duty of such performance devolved. * * * When, in this proposition, it is said that an 'equity' exists between the two parties, the meaning is that some equitable obligation to do some positive act with respect to the subject-matter arising from a cause recognized by the rule of equity jurisprudence rests upon B, and a corresponding equitable right to have the act done by B with respect to the same subject-matter springing from the same efficient cause is held by A. This active relation subsisting between the two parties, a court of equity, partly acting upon its fundamental principle of going beneath the mere external form and appearance of things and dealing with the real fact, the real, beneficial truth, and partly for the purpose of making its remedies more complete, treats the resulting rights of A as though the obligation of B had already been performed—regards A, in fact, as clothed with the same ultimate interests in the subject-matter which he would receive and hold if B had actually fulfilled his obligation by doing the act which he ought to do." 1 Pom. Eq., sec. 365 ; Adams Eq., 135 (6th Am. Ed., 295). Many illustrative cases can be found in our own and the reports of other States. The conceded facts in this case bring it within the maxim. Young, for a valuable consideration, *ought* to have made the assignment immediately upon the receipt of the check. Equity, for the purpose of effectuating the intention of the parties and doing exact justice, regards him as having done so, and secures to the defendant, to which he owed the duty, the benefit of its maxim. Young made the assignment in conformity to his agreement. He did exactly what a court of equity would have decreed him to do. Conceding that he did so because he

found that·his financial condition was becoming involved, we can perceive no reason why a delayed performance of a clear legal duty in respect to this specific property, to which his general creditors had no claim or right, can be imputed to him or to the defendant for unrighteousness. It has been well said: "When chancery interposes to compel the performance of an act which has been covenanted to be performed, it always treats the subject as if it had been performed at the time contracted." Thus, money placed in the hands of a trustee with direction to buy land and take title in the name of a *cestui que trust* will be regarded in equity as real estate and be disposed of, in the event of death before the purchase is made, accordingly. When land is devised or conveyed with direction to sell and pay the proceeds to specified persons, it will be treated as money and be so distributed in the event of death before the sale is made. Trusts will be impressed upon property by applying the maxim. As said, equity disregards mere form and looks to the substance, administering rights and remedies, moulding decrees to the securing of justice. It is immaterial whether the defendant knew of Young's insolvency. No liens had attached, no adjudication in bankruptcy had been made on 6 February, 1904, the date of the assignment. Young made the assignment, the goods were sold and the whole matter closed up before there was an adjudication in bankruptcy. We are of the opinion that, upon the entire evidence, defendants were entitled to judgment of nonsuit.

This disposes of both appeals. Judgment will be entered that there is error in defendant's appeal. Plaintiffs' appeal is affirmed. It is so ordered.

Error in Defendant's Appeal.

Plaintiffs' Appeal Affirmed.

HOKE, J., concurred in result.